UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IPS AVON PARK CORPORATION
AND D E JONES CONSULTING, INC.,

    Plaintiffs,

v.                                                                 Case No. 8:20-cv-1643-TPB-CPT

KINDER MORGAN, INC., EL PASO LLC,
SHADY HILLS POWER COMPANY LLC,
AND MESQUITE INVESTORS, LLC,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' "Motion for Summary Judgment and Incorporated Memorandum of Law" and "Plaintiffs IPS Avon Park Corporation and D E Jones Consulting, Inc.'s Motion for Summary Judgment," both filed on October 29, 2021. (Docs. 38; 40). Each party filed a response in opposition. (Docs. 45; 50). Defendant filed a reply. (Doc. 50). Upon review of the motions, responses, court file, and record, the Court finds as follows:

**Background**

IPS Avon Park Corporation ("Avon Park") and D E Jones Consulting, Inc. ("Jones Consulting") (collectively "Plaintiffs") are developers and consultants for energy projects. Kinder Morgan, Inc. ("Kinder Morgan"), El Paso LLC ("El Paso"),

and Mesquite Investors, LLC ("Mesquite") (collectively "Defendants") are entities involved in the ownership and development of energy projects.

In 1999, Plaintiffs entered a contract to evaluate and develop electric generation projects, including one in Pasco County, Florida.  Shady Hills Power Company, LLC ("Shady Hills Power") was formed to continue this development and own the Pasco County project (the "Project").  Plaintiffs were each granted a 2.5% equity interest in Shady Hills Power while Shady Hills Holding Company, LLC ("Shady Hills Holding"), an affiliate of El Paso, held the remaining 95% ownership interest in Shady Hills Power.  In 2000, Plaintiffs entered into an Agreement with El Paso, Shady Hills Power, and Shady Hills Holding to sell Plaintiffs' minority interests in Shady Hills Power.  As consideration for Plaintiff's minority interests, Plaintiffs each received payments totaling $4.25 million ($8.5 million in total).

The Agreement also provides that in the event of an Expansion of the Project, defined in the Agreement as "the addition of one or more combustion turbines to the site of the Project," Plaintiffs are entitled to an additional payment of $2.5 million. Specifically, the payment is due upon the issuance of a notice to proceed with the construction of the Expansion of the Project under any engineering, procurement, and construction contract ("EPC contract").  Section 2(b) of the Agreement (the "Payment Provision") states:

> The payment for the Expansion of the Project shall be due and payable upon the issuance of notice to proceed with construction of the Expansion of the Project under any engineering, procurement and construction contract related thereto.

(Doc. 1-3). El Paso also executed a Guaranty of Shady Hills' payment obligations arising from the Agreement. Kinder Morgan has since assumed El Paso's liability.

*The Existing Facility and Proposed New Facility*

A simple-cycle power plant was constructed at the Pasco County site (the "Existing Facility"). In 2016, Seminole Electric Cooperative ("Seminole Electric") requested proposals to meet its power supply needs, and Shady Hills Energy, LLC ("Shady Hills Energy"), an entity formed to develop an expansion of the Existing Facility, submitted a proposal which was selected by Seminole Electric. In 2017, Shady Hills Energy and Seminole Electric entered into a Tolling Agreement (the "Tolling Agreement") pursuant to which Shady Hills Energy would develop, design, operate, and own a new combined cycle generating facility (the "Proposed New Facility"). The Proposed New Facility would include the addition of a gas turbine and a steam turbine system.

*The Contracts and Notices to Proceed*

Shady Hills Energy entered into four agreements with varying degrees of connection to the expansion of the power plant. First, Shady Hills Energy entered a contract for the sale of power generation equipment and related services (the "GE Agreement") with General Electric Company ("GE"). The agreement requires GE to manufacture and ship certain equipment to be used at the Proposed New Facility and to provide project management services.

Second, Shady Hills Energy entered a contract with Duke Energy to connect the Proposed New Facility to the existing Duke Energy power grid to deliver power

to customers (the "Duke Agreement").  The Duke Agreement has a 30-year term with an automatic renewal provision.

Third, Shady Hills Energy entered a contract with Aquatech International, LLC ("Aquatech") for the construction of a turnkey water treatment facility (the "Aquatech Agreement").  The Aquatech Agreement is an EPC contract.

Fourth, Shady Hills Energy entered a contract with The Industrial Company ("TIC") for the construction of a combined cycle electric power generation facility.  The TIC Agreement is an EPC contract.  In connection with this contract, six notices to proceed were issued.  The first notice was for front-end engineering work.  The second authorized the design and construction of a concrete foundation pad about the size of a dining room for the fire pump enclosure that would service the Proposed New Facility.  The third authorized a silt fence around a cement slab on the property.  The fourth, fifth, and sixth authorized the mowing of the job site and the clearing of trees.

Due to a lack of financing and a dispute with Seminole Electric, the "Proposed New Facility" was never built.  Plaintiffs have each submitted invoices to Defendants requesting payment of the $1,250,000 that they allege is due pursuant to Section 2(b) of the Agreement.

On June 18, 2020, Plaintiffs filed a complaint against Defendants in state court, raising claims for breach of contract (Count I) and a breach of guaranty (Count II).  On July 17, 2020, Defendants removed the action to this Court based on diversity jurisdiction.  Plaintiffs and Defendants now move for summary judgment.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is only defeated by the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are

not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

### Counts I & II – Breach of Contract and Guaranty

Plaintiffs and Defendants both seek summary judgment on Plaintiffs' claim that Defendants are in breach of the Agreement and the Guaranty. Both arguments turn on the interpretation of Section 2(b) of the Agreement, the Payment Provision, and its application to the undisputed facts.

Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). Breach is the only element at issue here. Under Florida law, the interpretation of an unambiguous written contract is a matter of law for the court and is therefore properly subject to disposition by summary judgment. *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290, 1297 (11th Cir. 2011) (holding that summary judgment was properly entered based on interpretation of an unambiguous written contract); *Ciklin Lubitz Martens & O'Connell v. Casey*, 199 So. 3d 309, 310 (Fla. 4th DCA 2016) (interpretation of unambiguous contract presents a question of law for the court); *Gulliver Schools, Inc. v. Snay,* 137 So. 3d 1045, 1046 n.1 (Fla. 3d DCA 2014) (same).

The determination as to whether a contract provision is ambiguous is a question of law for the court. *Strama v. Union Fidelity Life Ins. Co.*, 793 So. 2d

1129, 1132 (Fla. 5th DCA 2001). A contract is unambiguous if it is not "susceptible to more than one *reasonable* interpretation." *Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 385 (Fla. 5th DCA 2014). "A true ambiguity does not exist because a contract can possibly be interpreted in more than one manner. Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible." *BKD Twenty-One Management Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012). "As a general rule, it is the duty of the court to determine the intention of the parties from the language used, apparent objects to be accomplished, other provisions in the agreement which might shed light on the question, and the surrounding circumstances at the time the agreement was entered into." *J & S Coin Operated Machines, Inc. v. Gottlieb*, 362 So. 2d 38, 39 (Fla. 3d DCA 1978).

Upon review, the Court finds, and the Parties themselves agree, that the Payment Provision at issue here is unambiguous. The payment obligation to Plaintiffs is triggered by the issuance of a notice to proceed with the construction "of the Expansion of the Project," and "Expansion" is expressly defined as the addition of one or more combustion turbines to the site of the Project. None of the notices to proceed issued under the four contracts authorizes a contractor to proceed with construction of the addition of one or more turbines to the site. Therefore, of the four contracts and various notices to proceed, none is sufficient to trigger the language of the Payment Provision. This conclusion is mandated by the express language of the contract at issue here and confirmed by the "objects to be accomplished" and "the surrounding circumstances at the time the agreement was

entered into." *J & S Coin Operated Machines,* 362 So. 2d at 39.  Because payment is not yet due, Plaintiffs cannot establish their claims for breach of contract.  As such, Plaintiffs' motion for summary judgment will be denied as to both counts, and Defendants' motion for summary judgment will be granted as to both counts.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants' "Motion for Final Summary Judgment" (Doc. 40) is hereby **GRANTED**.

(2) Plaintiffs' "Motion for Summary Judgment" (Doc. 38) is hereby **DENIED**.

(3) The Clerk of Court is directed to enter final judgment in favor of Defendants Kinder Morgan, Inc., El Paso LLC, Shady Hills Power Company, LLC, and Mesquite Investors LLC, and against Plaintiffs IPS Avon Park Corp. and D E Jones Consulting, Inc.

(4) The Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of January, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**